UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| ANDREA T., : | |
|     Plaintiff, : | |
| : | |
|     v. : | C.A. No. 19-505WES |
| : | |
| ANDREW M. SAUL, : | |
| COMMISSIONER OF SOCIAL SECURITY, : | |
|     Defendant. : | |

### REPORT AND RECOMMENDATION

PATRICIA A. SULLIVAN, United States Magistrate Judge.

Before the Court is the motion of Plaintiff Andrea T. for reversal of the decision of the Commissioner of Social Security ("Commissioner") denying Disability Insurance Benefits ("DIB") under the Social Security Act, 42 U.S.C. § 405(g) (the "Act"). Among an array of arguments, Plaintiff contends that the administrative law judge ("ALJ") erred in relying on the opinions of the non-examining expert physician and psychologist engaged by the Social Security Administration ("SSA") for the reconsideration phase – both at Step Two and in making his residual functional capacity ("RFC")[1] assessment – because the SSA experts did not see post-file review treating records that arguably indicate a material worsening of her condition. She also alleges egregious error by the Appeals Council in finding that significant evidence omitted from the ALJ's record failed to "show there is a reasonable probability that the additional evidence would change the outcome of the [ALJ's] decision." Tr. 2. Defendant Andrew M. Saul ("Defendant") has filed a counter motion for an order affirming the Commissioner's decision.

---

[1] Residual functional capacity is "the most you can still do despite your limitations," taking into account "[y]our impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what you can do in a work setting." 20 C.F.R. § 404.1545(a)(1).

The matter has been referred to me for preliminary review, findings and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B).  Having reviewed the entirety of the record, both that presented to the ALJ and that presented to the Appeals Council, I find that the ALJ erred in finding that the post-file review evidence evinced "no indication the claimant's condition substantially worsened or that a new condition developed that would substantially alter the pertinent findings."  Tr. 29.  Accordingly, I recommend that Plaintiff's Motion for Reversal of the Disability Determination of the Commissioner of Social Security (ECF No. 10) be GRANTED to the extent that it seeks remand for rehearing and that the Commissioner's Motion to Affirm His Decision (ECF No. 11) be DENIED.

**I.      Background**

Prior to the alleged date of onset (May 16, 2017) when she took a medical leave at the age of forty, Plaintiff had pursued skilled work for many years in the high-pressure world of mortgage and consumer lending as a loan processor and loan specialist.  See Tr. 277-89.  Plaintiff's qualifications included a high school diploma and a year of post-high school education.  Tr. 492.  Pertinent to this case are two of Plaintiff's teenage experiences – first, Plaintiff was raped, resulting in post-traumatic stress disorder ("PTSD"), and, second, she suffered a concussion, resulting in a life-long struggle with headaches, including migraines and cluster headaches for which she treated with a neurologist group.  Tr. 490-91.  More than ten years prior to onset, in the early 2000's, Plaintiff had surgery on each of her knees.  Tr. 491.  In 2015, Plaintiff lost her father to "septic shock" and got married for the first time.  Both events became the source of ongoing emotional trauma as she struggled to deal with grief, yet her marriage did not provide solace, but rather was fraught with conflict.  Id.  During the same period, she started a new job at a bank that went through lay-offs, cutting her department from

seven workers to two. Tr. 149-50. In the spring of 2017, when "it all started to just kind of crash down on me," she took a medical leave, qualified for temporary disability and, ultimately for long term disability. Tr. 150. She has not worked since May 2017.

Throughout the period of alleged disability, Plaintiff's primary care provider was a physician assistant, Dian Cullion, at CCAP Family Health Services ("CCAP"), while her treating psychiatrist was CCAP's Dr. Cynthia Jankowski. E.g., Tr. 415-68, 503-33. She received regular counseling with Shannon Duggan, LMHC, at Coordinated Counseling Services. E.g., Tr. 469-77, 560-61. Twice during the period, she was a patient at Butler Hospital, initially in December 2017 in the partial hospitalization program and the second time in August/September 2018 for intensive outpatient services. Tr. 481-89, 569-81. Throughout the period, she was treated regularly by Nurse Practitioner Talia Leuropa, of NeuroHealth, for migraines and cluster headaches. E.g., 499-501, 534-39. And during most of 2018, Plaintiff was seen by Dr. Franklin Mirrer for right knee pain associated with effusion and a possible meniscus tear and cartilage fragmentation. Tr. 67-105. Despite Dr. Mirrer's advice that surgery would probably not be a long term cure and that "she will continue to have some recurrence of knee pain years down the road," she elected to have surgery on the right knee in April 2018. Tr. 71. Post-surgery, effusion, stiffness and pain persisted, resulting aspiration of effusion performed later in April 2018 and again in late May 2018, as well as another aspiration and a cortisone injection in September 2018. Tr. 105.

At the crux of the issues posed by Plaintiff's appeal from the ALJ's adverse decision is who saw what portions of the medical record. This not-untypical problem is more complicated in this case by the approach to her representation taken by Plaintiff's initial advisers; they focused on her mental concerns to the exclusion of her physical impairments. As a result, until

she engaged her current attorney, which happened after the ALJ issued his decision but before the Appeals Council's review, a substantial tranche (over one hundred pages) of medical records applicable to the period in issue were not provided – these include almost all of the NeuroHealth records (reflecting long term treatment of migraines and cluster headaches) and all of the records reflecting treatment of the right knee (Dr. Mirrer and Roger Williams Medical Center, where the surgery was performed). Tr. 38-140. Yet the prior attorney (inaccurately as subsequent events revealed) advised the ALJ on January 22, 2019, that "all evidence has been submitted." Tr. 403. For purposes of discussing the issues posed by this "who saw what" problem, I have divided the medical evidence into three "sets," described below.

The first set of materials are those reviewed both by the SSA experts and by the ALJ. These include CCAP records for PA Cullion and Dr. Jankowski through April 2018; the Duggan counseling records through February 2018; one fragment of the NeuroHealth records (from March 8, 2018); the records from the first partial hospitalization at Butler Hospital; and a consulting examination ("CE") report from Dr. Louis Cerbo, an SSA expert psychologist. At the reconsideration phase, these records were reviewed by Dr. Erik Purins for physical impairments and Dr. Albert Hamel for mental impairments.[2] Regarding physical impairments, Dr. Purins opined that neither Plaintiff's headaches nor her knee problems hit the level of "severe" for purposes of Step Two. Tr. 194. In reaching this conclusion, he relied heavily on the paucity of documentary evidence, as well as on Plaintiff's failure in her application to allege "symptoms/limitations." Id. Based on what he could extract from the limited record presented, he found that, with "medication optimization initiated" for the headaches, they should not be "considered severe/limiting," while he "[e]xpect[ed] Orthopedic intervention to remedy/improve

---

[2] The ALJ relied only on the SSA non-examining opinions submitted at the reconsideration phase and did not mention those from the initial phase. Tr. 29.

the knee condition." Id.  Regarding mental impairments, Dr. Hamel found that depression and PTSD were severe impairments resulting in moderate limitations.  Noting the "very fragmentary," Tr. 195, nature of the record and placing great emphasis on the Cerbo CE report, he opined to an RFC with significant nonexertional limits, including the ability to perform only work involving short and simple instructions in a routine setting with no contact with the public and superficial interaction with supervisors and coworkers.  Tr. 197-99.

The second set of materials are those reviewed only by the ALJ in rendering his decision.  The second set includes Plaintiff's headache diary, an unauthenticated and unexplained list of headaches during parts of 2017 and 2018, apparently submitted right after the ALJ hearing by the first legal adviser.  Tr. 401-02.  More materially, it includes a substantial set of CCAP records from May 2018 through October 2018, principally notes of the psychiatrist, Dr. Jankowski.[3]  Tr. 582-656.  These records are noteworthy because in July 2018, Dr. Jankowski (for the first time) on mental status examination recorded, "Notable change decline," in both "Mood/affect" and "Behavior/functioning" and "Notable change" in "Medical condition"; based on these observations, she recommended that Plaintiff return to Butler.  Tr. 619.  Also seen by the ALJ, but not the SSA experts are Ms. Duggen's counseling records for March through November 2018.  Tr. 668-79.  These notes contrast with the earlier set in that a line of the treating notes labeled "Additional Target Symptoms" was consistently blank before, but in the more recent set it is almost always filled in with additional symptoms that Ms. Duggan considered important to record: these include (for example) "physical issues/pain," Tr. 669; "multiple physical sx

---

[3] The CCAP records in the second set include an opinion letter written just after onset by PA Cullion to MetLife in support of Plaintiff's disability claim under her employer's policy. Tr. 667. This letter does not set out an RFC, though it does opine regarding Plaintiff's inability to multitask and maintain the pace of work, particularly in addressing "multiple priorities, intense customer interaction, multiple stimuli, frequent change." Id. Unlike other records in the second set, the Cullion letter is consistent with the Cerbo report and does not reflect material worsening.

[symptoms] in process of dx [diagnosis]," Tr. 671; "migraines," Tr. 672; and "chronic pain," Tr. 677. Echoing Dr. Jankowski, Ms. Duggan noted suicidal ideation in early August 2018 and "clt to outreach Butler Hospital." Tr. 675. Also significant is Ms. Duggan's observation (for the first time) of Plaintiff's difficulties with ambulation: "clt mobility is limited." Tr. 679. The second set adds another fragment of the NeuroHealth record; from June and August 2018, this one is notable for the first-time recommendation and implementation (unknown to the SSA examiners) of the first of a series of monthly injections to treat the migraines. Tr. 534-39. Also in August 2018 and following are CCAP records reflecting a diagnosis of an adrenal cyst requiring monitoring. Tr. 558, 649. The last record seen by the ALJ but not the SSA experts is the Butler Hospital record from August/September 2018; it refers to "worsening symptoms of depression and anxiety in the context of multiple stressors." Tr. 569.

The ALJ's decision is built on the foundation of the first and second sets of records. To analyze the first set, he found the SSA experts to be persuasive and incorporated their findings at both Step Two and for his RFC. Somewhat illogically, the ALJ dismissed the Cerbo CE report as "not persuasive," despite his reliance on Dr. Hamel, who expressly grounded his own RFC findings in the Cerbo report.[4] As to the second set, the post-file review records, the ALJ ignored the references to worsening of Plaintiff's depression and anxiety, as well as the link newly drawn by the mental health treating professional between her worsening physical symptoms and her mental functioning. Instead, he wrote:

> Evidence was submitted after the date these opinions were given; however, this subsequent evidence does not warrant a change in the pertinent findings of [the

---

[4] Dr. Hamel's opinion – that Plaintiff was seriously limited and unable to perform her prior skilled work in banking but did retain the capacity to attend and understand required for very simple work – is based expressly on the Cerbo findings. Tr. 195 ("CE by Cerbo . . . continues to be the most complete report of conditions and functioning . . . as noted above: claimant has severe conditions and moderate impairments"). The ALJ's seeming rejection of Dr. Cerbo's report makes no sense.

6

> SSA experts] or the persuasiveness of their opinions. . . . <u>There was no indication the claimant's condition substantially worsened</u> or that a new condition developed that would substantially alter the pertinent findings.

Tr. 29 (emphasis supplied).

The third set of records were submitted only to the Appeals Council by Plaintiff's new attorney. Tr 37-140. These records include almost three years of records for NeuroHealth, the neurology group; these fill one of the holes noted by the SSA physician, Dr. Purins, in that they demonstrate ongoing and more than minimal[5] treatment of Plaintiff's headaches, including with injections, beginning well before the date of onset and continuing through the date of the ALJ hearing. The NeuroHealth records establish that Plaintiff's headaches did not respond to "medication optimization," as Dr. Purins expected they would, nor were the headaches resolved with a single injection, as the ALJ found in his decision.[6] Second, the third set of records includes all of the 2018 materials related to treatment of and surgery on Plaintiff's knee from Dr. Mirrer and Roger Williams Hospital. These records fill the other hole noted by Dr. Purins. Tr. 194. Importantly, far from revealing a knee problem that fully resolved with surgery, as Dr. Purins expected, the Mirrer notes establish that Plaintiff's knee pain was not expected to and did not resolve with surgery. Tr. 71, 68, 105. The Appeals Council rejected this proffer as failing to "show there is a reasonable probability that the additional evidence would change the outcome of the [ALJ's] decision." Tr. 2. The Appeals Council did not address the adequacy of Plaintiff's

---

[5] Injections may be considered conservative treatment, but they are not "minimal treatment." <u>Ruben M. v. Saul</u>, C.A. No. 19-119MSM, 2020 WL 39037, at *9 n.18 (D.R.I. Jan. 3, 2020), <u>adopted</u>, C.A. No. 1:19-CV-00119-MSM-PAS, 2020 WL 555186 (D.R.I. Feb. 4, 2020).

[6] The ALJ correctly noted that a record following the first injection reflects Plaintiff's report to her psychiatrist that she had been migraine-free for the first two weeks following the first monthly injection. Tr.23 (referring to Tr. 641). After that, as the records never submitted to the ALJ reveal, the migraines began to return, and Plaintiff was given at least two more injections. Tr. 41.

7

"good cause" for failing timely to submit the third set of records – the reason, as Plaintiff's current attorney argued, was that Plaintiff "was not well represented at her hearing."  Tr. 269.

## II.     Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – that is, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981); Brown v. Apfel, 71 F. Supp. 2d 28, 30 (D.R.I. 1999).  Once the Court concludes that the decision is supported by substantial evidence, the Commissioner must be affirmed, even if the Court would have reached a contrary result as finder of fact.  Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); see also Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991); Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 128 (1st Cir. 1981).  The determination of substantiality is based upon an evaluation of the record as a whole.  Brown, 71 F. Supp. 2d at 30; see also Frustaglia v. Sec'y of Health & Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177, 1180 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).  Thus, the Court's role in reviewing the Commissioner's decision is limited.  Brown, 71 F. Supp. 2d at 30.  The Court does not reinterpret the evidence or otherwise substitute its own judgment for that of the Commissioner.  Id. at 30-31 (citing Colon v. Sec'y of Health & Human Servs., 877 F.2d 148, 153 (1st Cir. 1989)).  "[T]he resolution of conflicts in the evidence is for the Commissioner, not the courts."  Id. at 31 (citing Richardson v. Perales, 402 U.S. 389, 399 (1971)).

If the Court finds either that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim, the Court may remand a case to the Commissioner for a rehearing under Sentence Four of 42 U.S.C. § 405(g).  Allen v. Colvin, No. CA 13-781L, 2015 WL 906000, at *8 (D.R.I. Mar. 3, 2015) (citing Jackson v. Chater, 99 F.3d 1086, 1097-98 (11th Cir.1996)).  If the Court finds that a judicial award of benefits would be proper because the proof is overwhelming, or the proof is very strong and there is no contrary evidence, the Court can remand for an award of benefits. Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001).

### III.  Disability Determination

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 416(I); 20 C.F.R. § 404.1505.  The impairment must be severe, making the claimant unable to do previous work, or any other substantial gainful activity which exists in the national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-1511.

#### A.  The Five-Step Evaluation

The ALJ must follow five steps in evaluating a claim of disability.  See 20 C.F.R. § 404.1520.  First, if a claimant is working at a substantial gainful activity, the claimant is not disabled.  20 C.F.R. § 404.1520(b).  Second, if a claimant does not have any impairment or combination of impairments that significantly limit physical or mental ability to do basic work activities, then the claimant does not have a severe impairment and is not disabled.  20 C.F.R. § 404.1520(c).  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Appendix 1, the claimant is disabled.  20 C.F.R. § 404.1520(d).  Fourth, if a claimant's

impairments do not prevent doing past relevant work, the claimant is not disabled. 20 C.F.R. § 404.1520(e)-(f). Fifth, if a claimant's impairments (considering RFC, age, education and past work) prevent doing other work that exists in the local or national economy, a finding of disabled is warranted. 20 C.F.R. § 404.1520(g). Significantly, the claimant bears the burden of proof at Steps One through Four, but the Commissioner bears the burden at Step Five. Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five step process applies to both DIB and SSI claims).

### B.  Opinion Evidence

For applications like this one, filed on or after March 27, 2017, the SSA has fundamentally changed how adjudicators assess opinion evidence. The familiar and longstanding requirements – that adjudicators must assign "controlling weight" to a well-supported treating source's medical opinion that is consistent with other evidence, and, if controlling weight is not given, must state the specific weight that is assigned – are gone. 20 C.F.R. § 404.1520c(a). Instead, adjudicators "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." Id. Rather, an ALJ must consider the persuasiveness of all medical opinions in a claimant's case record. See 20 C.F.R. § 404.1520c. The most important factors to be considered when the Commissioner evaluates persuasiveness are supportability and consistency; these are usually the only factors the ALJ is required to articulate. 20 C.F.R. § 404.1520c(b)(2); Jones v. Berryhill, 392 F. Supp. 3d 381, 839 (M.D. Tenn. 2019); Gorham v. Saul, Case No. 18-cv-853-SM, 2019 WL 3562689, at *5 (D.N.H. Aug. 6, 2019). Supportability "includes an assessment of the supporting objective medical evidence and other medical evidence, and how consistent the medical opinion or . . . medical finding is

with other evidence in the claim." Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5859 (Jan. 18, 2017). Other factors that are weighed in light of all of the evidence in the record include the medical source's relationship with the claimant and specialization, as well as "other factors" that tend to support or contradict the medical opinion or finding. See 20 C.F.R. § 404.1520c(c)(1)-(5); Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. at 5859. In other words, "[a] medical opinion without supporting evidence, or one that is inconsistent with evidence from other sources, [is] not . . . persuasive regardless of who made the medical opinion." Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. at 5854.

### C.   Evaluation of Subjective Symptoms

When an ALJ decides to discount a claimant's subjective statements about the intensity, persistence and severity of symptoms, he must articulate specific and adequate reasons for doing so or the record must be obvious. See Da Rosa v. Sec'y of Health & Human Servs., 803 F.2d 24, 26 (1st Cir. 1986); Rohrberg v. Apfel, 26 F. Supp. 2d 303, 309-10 (D. Mass. 1998). A reviewing court will not disturb a clearly articulated finding supported by substantial evidence. See Frustaglia, 829 F.2d at 195. If proof of disability is based on subjective evidence so that the credibility determination is determinative, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)). Guidance in evaluating the claimant's statements regarding the intensity, persistence, and limiting effects of subjective symptoms is provided by SSR 16-3p, 2017 WL 4790249, at *49462 (Oct. 25, 2017). It directs the ALJ to consider the entire case record, including the objective medical evidence; an individual's statements about the intensity,

11

persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; any other relevant evidence; and whether statements about the intensity, persistence, and limiting effects of symptoms are consistent with the medical signs and laboratory findings.  SSR 16-3p, 2017 WL 4790249, at *49465.

**IV.    Analysis**

This case is quickly resolved by the well-settled proposition that remand is required when "the state-agency physicians were not privy to parts of [plaintiff's] medical record [which] detracts from the weight that can be afforded their opinions."  Ruben M. v. Saul, C.A. No. 19-119MSM, 2020 WL 39037, at *9 (D.R.I. Jan. 3, 2020), adopted, C.A. No. 1:19-CV-00119-MSM-PAS, 2020 WL 555186 (D.R.I. Feb. 4, 2020) (quoting Virgen C. v. Berryhill, C.A. No. 16-480 WES, 2018 WL 4693954, at *2-3 (D.R.I. Sept. 30, 2018)) (alterations in original); see Sandra C. v. Saul, C.A. No. 18-375JJM, 2019 WL 4127363, at *6 (D.R.I. Aug. 30, 2019) ("Remand is necessary to allow for an error-free evaluation of the complete record.").  As Virgen C. makes clear, an ALJ cannot rely on a file review opinion if post-review developments reflect a significant worsening of the claimant's condition because such an opinion does not amount to substantial evidence.  2018 WL 4693954, at *3 ("[I]f a state-agency physician reviews only a partial record, her 'opinion cannot provide substantial evidence to support [an] ALJ's residual functional capacity assessment if later evidence supports the claimant's limitations.'") (citing Ledoux v. Acting Comm'r, Soc. Sec. Admin., Civil No. 17-cv-707-JD, 2018 WL 2932732, at *4 (D.N.H. June 12, 2018)) (second alteration in original).  This fundamental proposition is not altered by the new regulations that empower the ALJ to "consider whether new evidence we receive after the medical source made his or her medical opinion or prior administrative medical

finding makes the medical opinion or prior administrative medical finding more or less persuasive." 20 C.F.R. § 404.1520c(c)(5).

By deciding not to call a medical expert, the ALJ was left to deploy his lay judgment as the interpretative tool, both at Step Two and to determine the RFC, to analyze the post-file review records (the second set), which present a complex medical muddle replete with "indications" that Plaintiff's condition may have worsened, particularly in that her physical impairments may have exacerbated to the point of severity or at least to the point where they were adversely affecting her mental impairments. The ALJ's resulting conclusion that they lack any "indication the claimant's condition substantially worsened" is simply wrong. Tr. 29. In fact, these records expressly describe Butler Hospital's notation of "worsening"; Dr. Jankowski's first time observation of "decline" in key mental metrics; Ms. Duggan's newly expressed concerns about the adverse impact of Plaintiff's physical issues (e.g., "chronic pain") on her mental status, as well as her observation of limits on Plaintiff's mobility; and the first time initiation of injections to treat the migraines.

The circumstances in this case differ markedly from, for example, Michele S. v. Saul, C.A. No. 19-65WES, 2019 WL 6242655 (D.R.I. Nov. 22, 2019), in which the Court found that the ALJ carefully reviewed the post-file review evidence and correctly concluded there was no evidence to establish "the requisite worsening." 2019 WL 6242655, at *8. When such a review results in the common-sense observation that the pre- and post-review records are similar, there is no need for an additional medical expert. Sanford v. Astrue, No. CA 07-183 M, 2009 WL 866845, at *8 (D.R.I. Mar. 30, 2009). Indeed, to render an SSA opinion irrelevant merely because the expert was not privy to updated medical records "would defy logic and be a formula for paralysis." Id. at *8 (citing Kendrick v. Shalala, 998 F.2d 455, 456–57 (7th Cir. 1993)).

However, when, as here, there are indications of worsening requiring medical interpretation, an adjudicator's failure to procure assistance from an expert requires remand for further proceedings. Alcantara v. Astrue, 257 F. App'x 333, 334 (1st Cir. 2007) (per curiam) ("Absent a medical advisor's or consultant's assessment of the full record, the ALJ effectively substituted his own judgment for medical opinion."); Ruben M., 2020 WL 39037, at *10 ("ALJ's reliance on the state-agency physician opinion is error because of the post-file review treating records (the MRI findings and MRI-based injections) evidencing a worsening of Plaintiff's spinal impairment that the state-agency physician did not consider"); Sandra C., 2019 WL 4127363, at *6 ("It is well settled that remand is required when an ALJ relies on an RFC . . . opined to by an SSA non-examining source who lacked access to records reflecting a material worsening of symptoms") (citing Mary K v. Berryhill, 317 F. Supp. 3d 664, 668 (D.R.I. 2018) ("[c]ourt does not know whether the non-examining state agency physicians would have rendered the same Step 2 opinions if they had all of the medical evidence")).

With remand required for further consideration of the post-file review evidence in the second set, both at Step Two and with respect to Plaintiff's RFC, in the interest of justice and fairness and mindful that the Act must be "liberally applied," Ferguson v. Colvin, 63 F. Supp. 3d 207, 211 (D.R.I. 2014), I also recommend that the Court direct that the ALJ must consider the complete record, including the evidence in the third set. If the Court adopts this recommendation, the Court need not resolve the more difficult issues posed by the determination of the Appeals Council regarding the late-submitted evidence in the third set. See Harlen David O. v. Berryhill, C.A. No. 18-17WES, 2019 WL 2501884, at *14 & n.21 (D.R.I. Feb. 13, 2019) (to find Appeals Council error, court must consider whether "good cause" excuses late submission and whether it is "additional evidence that is new, material, and relates to the period

14

on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision"). In particular; there is no need for the Court to assess whether egregious error taints the decision of the Appeals Council that the untimely-submitted evidence does not "show there is a reasonable probability that the additional evidence would change the outcome of the [ALJ's] decision," Tr. 2, or to grapple with whether Plaintiff had good cause for failing to timely submit these materials.[7]

Otherwise, I find the ALJ's error in rejecting the Cerbo report is harmless in that the ALJ relied on Dr. Hamel, who relied on Dr. Cerbo. I find no error in the ALJ's finding that PA Cullion's opinion letter to MetLife, which does not purport to set out RFC limitations, is less persuasive than the opinions of the SSA experts with respect to RFC limitations. And I see no error in the ALJ's finding, supported by the SSA evaluators, that Plaintiff's subjective statements are "not supported by the evidence of record to the degree alleged." Tr. 29; see Tr. 181, 196 (medical finding, both initially and on reconsideration, that Plaintiff's statements only partially consistent with medical evidence). Nevertheless, with remand necessary to properly evaluate the post-file review evidence and to consider the late produced material with the assistance of a medical expert, I also recommend that the Court direct that the ALJ reweigh his assessment of Plaintiff's subjective statements in light of that evidence.[8]

---

[7] To base "good cause" on an omission of counsel is a tenuous matter. See Harlen David O., 2019 WL 2501884, at *14 n.21.

[8] Plaintiff asks the Court to order that, on remand, this matter should be assigned to a different ALJ. Plaintiff's only reason appears to be that her attorney has perceived bias of an undisclosed nature in a different case. This is legally insufficient to justify the extraordinary relief Plaintiff seeks. Johnson v. Colvin, 204 F. Supp. 3d 396, 414 (D. Mass. 2016) (court refuses to order reassignment on remand despite inappropriate comments by administrative law judge; "even a stern and short-tempered judge's ordinary efforts at courtroom administration . . . remain immune from being cast as a judicial disqualification"); Mitchell v. Astrue, No. CA 07-229 ML, 2009 WL 50171, at *8 (D.R.I. Jan. 7, 2009) (court refuses to order assignment of different medical expert despite claim of bias; "no evidence to support these serious allegations of bias and manipulation"). I do not recommend reassignment.

**V.     Conclusion**

Based on the foregoing analysis, I recommend that Plaintiff's Motion for Reversal of the Disability Determination of the Commissioner of Social Security (ECF No. 10) be GRANTED to the extent that it seeks remand for rehearing and that the Commissioner's Motion to Affirm His Decision (ECF No. 11) be DENIED.  Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days of its receipt.  See Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d).  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision.  See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).


/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
May 4, 2020